**Not for Publication**

### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

UNITED STATES OF AMERICA

*Plaintiff*,

v.

DAVID BRIAN MCFADDEN,

*Defendant*.

Crim. No. 19-15

**OPINION**

**John Michael Vazquez, U.S.D.J.**

This matter comes before the Court by way of Defendant David McFadden's motion to commute his sentence or for immediate compassionate release. D.E. 34, 35. The Government filed opposition. D.E. 36. The Court reviewed the parties' submissions[1] and considered the motions without oral argument pursuant to Local Criminal Rule 1.1 and Local Civil Rule 78.1(b). For the following reasons, Defendant's motion is denied.

### I. BACKGROUND

On January 8, 2019, Defendant pled guilty to an information charging him with a violation of 18 U.S.C. § 922(g)(1) – unlawfully possessing a firearm after having been convicted of a felony offense. D.E. 19, 21. On May 14, 2019, the Court sentenced Defendant to twenty-four months imprisonment followed by three years of supervised release. D.E. 28, 29, 32. The Court permitted Defendant to self-surrender to the institution designated by the United States Bureau of Prisons

---

[1] Defendant's *pro* se letter brief in support of his motion is referred to as "Br." (D.E. 34); Defendant's counsel's supplemental brief is referred to as "Supp. Br." (D.E. 35); and the Government's opposition brief is referred to as "Opp." (D.E. 36).

("BOP"). Defendant thereafter reported to the Metropolitan Correctional Center ("MCC") in New York. Defendant contends that he is eligible for release to home confinement on August 12, 2020, Supp. Br. at 2, but the Government indicates that the date is actually July 28, 2020, Opp. at 1.

Defendant raises the following grounds in support of his motion: (1) three lockdowns at MCC (and resulting issues, such as cold food and living in a dormitory setting with pretrial inmates); (2) an additional gun search lockdown, temporary transfer to another facility, and misplacement of his personal property; (3) COVID-19 and MCC's conditions; and (4) Defendant's fiancée's loss of her mother and grandfather to COVID-19 (with additional family responsibilities being undertaken by the fiancée.). *See* Br. Defendant's counsel also points to the fact that (1) Defendant has not had any disciplinary issues at MCC; (2) Defendant's race makes him more vulnerable to an adverse outcome should he contract COVID-19 (while acknowledging that Defendant does not suffer from any underlying health conditions that make him more vulnerable); (3) the higher rates of COVID-19 in the BOP; (4) Defendant has served the majority of his term; and (5) Defendant does not present a danger to the community. *See* Supp. Br. The Government responds that (1) BOP has taken affirmative steps to address the pandemic; (2) MCC has had a low rate of infection (7 out of 683 inmates); (3) Defendant has failed to show extraordinary and compelling reasons justifying his release; (4) the factors under 18 U.S.C. § 3553 do not support Defendant's motion; and (5) the area to which Defendant will be released actually has a much higher rate of COVID-19 infections. *See* Opp..

Defendant first sought release through an application to the Warden of MCC on April 21, 2020. The BOP denied his request April 21, 2020. Defendant now seeks relief pursuant to 18 U.S.C. § 3582(c)(1)(A).

## II. LEGAL STANDARD

Following the passage of the First Step Act, Section 3582(c)(1)(A) now reads as follows:

> (c) Modification of an imposed term of imprisonment.—The court may not modify a term of imprisonment once it has been imposed except that—
>
> (1) in any case—
>
> (A) the court, upon motion of the Director of the Bureau of Prisons, or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the Bureau of Prisons to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) *extraordinary and compelling reasons warrant such a reduction*; or
>
> (ii) the defendant is at least 70 years of age, has served at least 30 years in prison, pursuant to a sentence imposed under section 3559(c), for the offense or offenses for which the defendant is currently imprisoned, and a determination has been made by the Director of the Bureau of Prisons that the defendant is not a danger to the safety of any other person or the community, as provided under section 3142(g);
>
> *and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission*; and
>
> (B) the court may modify an imposed term of imprisonment to the extent otherwise expressly permitted by statute or by Rule 35 of the Federal Rules of Criminal Procedure; and
>
> (2) in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant or the Director of the Bureau of Prisons, or on its own motion, the court may reduce the term of imprisonment, after considering the factors set forth in section 3553(a) to the extent that they are applicable, if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3582(c)(1)(A) (emphases added).  The parties agree that Defendant has satisfied the statutory exhaustion requirement.

The applicable policy statement of the United States Sentencing Commission is found in Section 1B1.13.  U.S.S.G. § 1B1.13.  The application notes to the section provide four circumstances that can be considered extraordinary and compelling:  (1) the medical condition of the defendant, (2) the age of the defendant, (3) family circumstances, and (4) other circumstances constituting an extraordinary or compelling reason, either considered alone or in combination with any of the other three stated reasons.  *Id.* cmt. n. 1(A)-(D).  In the application notes, the fourth consideration requires a determination of the Director of the BOP.  *Id.* cmt. n. 1(D).  Here, the Government acknowledges that the policy statement should also apply when the motion is filed by a defendant in addition to the BOP Director.  Opp. at 7 n.3.  The Court agrees.  *See United States v. Rodriguez*, – F. Supp. 3d –, 2020 WL 1627331, at *4-6 (E.D. Pa. April 1, 2020).

Pursuant to Section 3582(c)(1)(A), the Court must also consider the factors listed in 18 U.S.C. § 3553(a).  They include the nature and circumstances of Defendant's offense, the history and characteristics of Defendant, the need for the sentence to provide just punishment, and the need to protect the public from future offenses of Defendant.  *Id.*

### III.     ANALYSIS

The Court finds that Defendant has not demonstrated extraordinary and compelling reasons under Section 3582(c)(1)(A). At the outset, the Court acknowledges that the COVID-19 pandemic has had a devastating impact on the United States.  District Judge John E. Jones III described the situation as follows:

> In a matter of weeks, the novel coronavirus COVID-19 has rampaged across the globe, altering the landscape of everyday American life in ways previously unimaginable.  Large portions of our economy have come to a standstill.  Children have been forced

> to attend school remotely. Workers deemed 'non-essential' to our national infrastructure have been told to stay home. Indeed, we now live our lives by terms we had never heard of a month ago—we are "social distancing" and "flattening the curve" to combat a global pandemic that has, as of the date of this writing, infected 719,700 people worldwide and killed more than 33,673. Each day these statistics move exponentially higher.

*Thakker v. Doll*, – F. Supp. 3d –, 2020 WL 1671563, at *2 (M.D. Pa. Mar. 31, 2020) (footnotes omitted). On the date of Judge Jones' opinion, the United States had 186,101 COVID-19 cases. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/previouscases.html (last visited July 7, 2020). As of July 22, 2020 – nearly four months later – the United States had 3,882,167 cases and 141,677 deaths. https://www.cdc.gov/coronavirus/2019-ncov/cases-updates/cases-in-us.html (last visited July 22, 2020).

The Court similarly recognizes that "[p]risons are ill-equipped to prevent the spread of COVID-19." *Rodriguez*, 2020 WL 1627331, at *8. This fact seems to be recognized at the highest levels of government. The coronavirus relief bill enacted on March 27, 2020 allows the Attorney General to increase the BOP's capacity to move prisoners to home confinement. *See* Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116-136, § 12003(b)(2) (2020). This congressional action came after Attorney General William Barr sent a memorandum to the Director of the BOP recognizing that "there are some at-risk inmates who are non-violent and pose minimal likelihood of recidivism and who might be safer serving their sentences in home confinement rather than in BOP facilities." Memo. from Attorney Gen. William Barr to Director of BOP, *Prioritization of Home Confinement as Appropriate in Response to COVID-19 Pandemic* (Mar. 26, 2020).

At the same time, as the Government points out, the BOP has taken affirmative steps to combat the pandemic. The BOP developed a "COVID-19 Action Plan."

https://www.bop.gov/resources/news/20200313_covid-19.jsp (last visited July 7, 2020). On May 18, 2020, the BOP moved to phase seven of the plan. https://www.bop.gov/resources/news/20200520_covid-19_phase_seven.jsp (last visited July 22, 2020). The BOP has limited group gatherings in certain areas, limited the movements of inmates within facilities (with the exception of medical treatment or similar exigencies), and issued face masks to all staff and inmates. https://www.bop.gov/coronavirus/covid19_status.jsp (last visited July 22, 2020). The Government also represents that all new inmates entering MCC are screened for COVID-19; those who are asymptomatic but have a risk of exposure are quarantined for at least 14 days while those who show symptoms are isolated until further testing and medical clearance can occur. Opp. at 4.

Currently, there is no cure for COVID-19, and all persons are at risk. However, according to the Centers for Disease Control and Prevention, certain individuals are at higher risk. https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-at-increased risk.html (last visited July 7, 2020).

Here, Defendant acknowledges that he does not suffer from any medical conditions that make him particularly vulnerable to COVID-19. Similarly, he fails to demonstrate that he is suffering from any serious physical or mental condition, he is suffering from any serious cognitive or functional impairment, or that he is experiencing deteriorating mental or physical health due to the aging process. The Third Circuit has observed that the mere existence of COVID-19 and the fact that it may spread to a particular prison does not, standing alone, justify compassionate release. *United States v. Raia*, 954 F.3d 594, 597 (3d Cir. 2020). To this end, the measures instituted by MCC appear to have been largely effective as the facility has had only seven positive cases among inmates.

Defendant also points to the unfortunate passing of his fiancée's two family members. However, his fiancée remains healthy and the primary caregiver to her children. In fact, at the time of Defendant's sentencing, the Court recognized that Defendant's fiancée worked long hours while also caring for her two children as well as Defendants' three children.

Finally, as to the Section 3553(a) factors, the Court disagrees with Defendant that he does not represent a potential danger to the community. He illegally possessed a loaded firearm after having sustained a felony drug conviction. Critically, given that the Court sentenced Defendant only fourteen months ago, the Court's Section 3553(a) analysis at that time is still relevant and applicable today. And Defendant is currently scheduled to be released to home confinement in the near future, perhaps within a week.

## IV. CONCLUSION

For the foregoing reasons, the Court denies Defendant's motion. An appropriate Order accompanies this Opinion.

John Michael Vazquez, U.S.D.J.